IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CARL GALLO, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-cv-0032-MJR-SCW |
| | ) | |
| DR. ADRIAN FEINERMAN, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER

REAGAN, District Judge:

## I.  Introduction

Carl Gallo filed suit in this district court in January 2007, alleging that two doctors, Dr. Ahmed and Dr. Feinerman, were deliberately indifferent to his serious medical needs and thereby violated his Eighth Amendment right to be free of cruel and unusual punishment.[1]  The sole remaining Defendant, Feinerman, now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 (Doc. 77).  Gallo has filed a Response in opposition to the motion (Doc. 81).  So, the matter is fully briefed and ready for disposition.

## II.  Factual Findings

---

[1] On February 9, 2009, on threshold review, the Court dismissed the action with prejudice. On December 17, 2010, the United States Court of Appeals for the Seventh Circuit issued its mandate affirming the judgment with respect to Dr. Ahmed, reversing with respect to Dr. Feinerman and remanding the case for further proceedings.  ***Gallo v. Feinerman*, 399 Fed.Appx. 118 (7th Cir. 2010)**.

The incidents giving rise to this case occurred while Gallo was incarcerated at Menard Correctional Center (MCC).  Gallo suffers from gastroesophageal reflux disease and ulcerative colitis, which is a gastrointestinal disorder characterized by pain, blood in the stool, abdominal cramping, and which may result, in severe cases, in the removal of parts of the bowel (Doc. 77-1 at p. 2; Doc. 77-3, Feinerman Dep. at p. 11).  Gallo was taking Prilosec for this condition, but, on June 25, 2004, the prison doctor noted that Prilosec was causing side effects and that reducing the dosage resulted in less gas, mucus, and stool frequency (Doc. 1-1 at p. 16).  The doctor prescribed a trial of Prevacid, noting that it had helped before. (*Id.*).

At some point, Prilosec was again prescribed for Gallo because when he saw a prison doctor on March 2, 2005, he complained that Prilosec and antacids were causing an allergic reaction:  his tongue swelled and he had a rash (Doc. 1-1 at p. 18).  The medical record also shows that Gallo received another prescription for Prevacid on March 31, 2005.  (*Id.* at p. 17). He was scheduled for a flexible fiberoptic sigmoidoscopy in May 2005 and scheduled to see Dr. Krieg in four-to-six weeks after the procedure (Doc. 1-1 at p. 19).  Gallo saw Krieg, a part-time doctor at MCC, on July 14 or 16, 2005. (Doc. 77-3, Feinerman Dep. at p. 5-6; Doc. 77-1 at p. 2).  At that time, Krieg continued to prescribe Prevacid to treat Gallo's ulcerative colitis (Doc. 77-3, Feinerman Dep. at 11; Doc. 77-1 at p. 2).

However, on July 29, 2005, Feinerman discontinued Gallo's Prevacid prescription because it was a non-formulary drug and, instead, prescribed Prilosec (Doc. 77-1 at p. 3). It is unclear whether Dr. Feinerman saw Gallo on that date or if he just changed the prescription without having seen Gallo.[2]

Gallo saw Feinerman on August 9, 2005. At that time, Gallo told Feinerman that he was allergic to Prilosec and wanted Prevacid prescribed instead (Doc. 77-1 at p. 4). Feinerman discontinued the Prilosec, but it does not appear that anything else was prescribed in its place. (*Id.*). In Feinerman's affidavit, he simply states that, at Gallo's request, he discontinued Prilosec (Doc. 77-2, p. 2, Feinerman Aff.).

Feinerman stated in his deposition that when prescribing drugs at MCC, he would consult the formulary and prescribe accordingly (Doc. 77-3, Feinerman Dep. at p. 6). However, he also stated that it was possible to obtain non-formulary drugs, and virtually any medicine was available. *Id.* Feinerman testified that in requesting non-formulary drugs, it "would be unusual of them to say, no, you can't have that drug." (*Id.* at 7).

As described by Feinerman, Prilosec is a brand name for omeprazole, and Prevacid is a brand name for lansoprazole (Doc. 77-3, Feinerman Dep. at p. 9). Both are proton pump inhibitors (PPIs) used to decrease the amount of acid in a patient's system and relieve

---

[2] According to Gallo's August 1, 2005, grievance, Feinerman did not see him and did not review his medical file before changing his prescription to Prilosec (Doc. 1-1, p. 8).

gastrointestinal symptoms.  (*Id.*).  While the two drugs are similar and serve the same purpose, they are not identical and have slightly different chemical compositions.  (*Id.* at 13).

Feinerman indicated that he did not consult with Dr. Krieg when he discontinued Prevacid and prescribed Prilosec.  (*Id.* at 11).  He testified that he did not recall that there was ever any significant concern about allergic reactions to Prilosec and that he had "been prescribing that stuff for twenty years" and had not "seen it yet." (*Id.* at 12).  However, Feinerman acknowledged that Prilosec could cause allergic reactions, including swelling of the lips, throat and tongue, and the symptoms of which Gallo complained were consistent with those of an allergic reaction. (*Id.* at 12, 13*).* He also stated that he was familiar with Gallo's prescription history and the issue related to Prilosec and Prevacid. (*Id.* at 11).  Feinerman further stated that he would not believe an allergy to Prilosec existed until Gallo showed him the symptoms.[3] (*Id.* at 14).  Feinerman did not recall taking any steps to resolve the question of whether Gallo was experiencing side effects as a result of the prescription of Prilosec.  (*Id.* at 14).

### III.  Conclusions of Law

### A. Summary Judgment Standard

---

[3] According to a counselor's September 12, 2005, response to Gallo's grievance, Feinerman stated that "he can no longer prescribe Prevacid as it is not in the allowed formulary. Prilosec is an acceptable substitute and … there is no documentation that would indicate an allergic reaction to it" (Doc. 1-1 at p. 15).

Summary judgment is proper only "if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011)(internal quotation marks omitted)(citing FED.R.CIV.P. 56(a)); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The party seeking summary judgment bears the initial burden of demonstrating – based on the pleadings, affidavits, and/or information obtained via discovery – the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 323 (1986).

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)(quoting FED.R.CIV.P. 56(e)(2)).[4] A fact is material if it is outcome determinative under applicable law. *Anderson*, 477 U.S. 242, 248 (1986); *Balance v. City of Springfield, Illinois Police Department*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could

---

[4] Though Rule 56 was amended in 2010, the amendment did not change the summary judgment standard. *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011).

return a verdict for the nonmoving party." *Anderson*, **477 U.S. at 248**. "A mere scintilla of evidence in support of the nonmovant's petition is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion." *Albiero v. City of Kankakee*, **246 F.3d 927, 931-32 (7th Cir. 2001)(citations and quotations omitted)**.

On summary judgment, the Court considers the facts in the light most favorable to the non-movant. *Srail v. Vill. of Lisle*, **588 F.3d 940, 948 (7th Cir. 2009)**. The Court adopts reasonable inferences and resolves doubts in the nonmovant's favor. *Id.*; *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, **528 F.3d at 512**. Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, **371 F.3d 928, 935 (7th Cir. 2004)**. *See also Anderer v. Jones*, **385 F.3d 1043, 1064 (7th Cir. 2004)**.

B. Deliberate Indifference

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, **509 U.S. 25, 31 (1993)**. The Eighth Amendment's prohibition against cruel and unusual punishment "requires the State to provide adequate medical care to incarcerated prisoners." *DeShaney v. Winnebago County Dep't of Soc. Services*, **489 U.S. 189,**

**198 (1989)**. Since an inmate cannot care for himself because of the deprivation of his liberty, "it is only 'just' that the State be required to care for him." ***Id.* at 199 (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976) (quoting *Spicer v. Williamson*, 191 N.C. 487, 490, (1926))**. The Eighth Amendment imposes a duty on prison officials to ensure that inmates receive adequate medical care. ***Farmer v. Brennan*, 511 U.S. 825, 832 (1994)**.

Deliberate indifference to a prisoner's serious medical need constitutes a violation of the prisoner's Eighth Amendment rights. ***Estelle*, 429 U.S. at 104**. "A claim of deliberate indifference to a serious medical need contains both an objective and a subjective component." ***Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005); *Farmer*, 511 U.S. at 834**. "To satisfy the objective component, a prisoner must demonstrate that his medical condition is objectively, sufficiently serious…. To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a sufficiently culpable state of mind." ***Id.* (citations and quotation marks omitted)**.

In analyzing whether a plaintiff suffered from an objectively serious condition posing a substantial risk of serious harm, "[t]he question under the Eighth Amendment is whether prison officials … exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health….'" ***Farmer*, 511 U.S. at 843 (quoting *Helling*, 509 U.S. at 35)**.

To satisfy the objective component, a prisoner must show that his medical needs are "objectively, sufficiently serious." **Greeno**, **414 F.3d at 653 (citing Farmer, 511 U.S. at 834)**.  "A serious medical condition is one that has been diagnosed by a physician … or one that is so obvious that even a lay person would perceive the need for a doctor's attention." **Id.**  An injury or illness meets the objective element if the condition is sufficiently serious or painful so as to make the denial of treatment uncivilized. **Cooper v. Casey**, **97 F.3d 914, 916 (7th Cir. 1996)**.  "[T]here is no requirement that a prisoner provide 'objective' evidence of his pain and suffering – self-reporting is often the only indicator a doctor has of a patient's condition." **Greeno**, **414 F.3d at 655**.

The second component of the two-part test requires that "a prison official have a sufficiently culpable state of mind," and that state of mind is one of "deliberate indifference." **Farmer**, **511 U.S. at 834**. Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs…." **Kelley v. McGinnis**, **899 F.2d 612, 616 (7th Cir. 1990) (quoting Estelle, 429 U.S. at 104-105) (internal quotations omitted)**. To be found liable for deliberate indifference, the official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." **Farmer**, **511 U.S. at 837**. "[A] factfinder may conclude that a

prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* **at 842**.

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence...." *Id.* If a plaintiff were able to present evidence that a particular risk was well-documented or "expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk" the evidence could be sufficient to find that the individual had actual knowledge of the risk. *Id.* **at 842-43**. The actions committed must be deliberate or so dangerous that the knowledge of the risk can be inferred. *Snipes v. DeTella*, **95 F.3d 586, 590 (7th Cir. 1996)**. "A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition.'" *Id.* **at 592 (quoting *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974))**. A prisoner does not have to show that they were "literally ignored" to prevail on an Eighth Amendment claim. *Greeno*, **414 F.3d at 653**.

In *Greeno*, the fact that the nurse thought the prisoner was "malingering and did not have a severe medical need" was determined to be an issue for the jury to decide. *Id.* **at 655**. The Court in *Cooper* held that

to deliberately ignore a request for medical assistance was a form of cruel and unusual punishment.  **Cooper v. Casey, 97 F.3d 914, 916 (7th Cir. 1996)**.  In *Kelley*, the Court stated that deliberate indifference could be found where "the clinic personnel deliberately gave a certain kind of treatment knowing that it was ineffective, either as a means of toying with [the inmate] or as a way of choosing 'the easier and less efficacious treatment.'"  **Kelley v. McGinnis, 899 F.2d 612, 616 (7th Cir. 1990) (quoting *Estelle*, 429 U.S. at 104) (additional citation omitted)**.

Feinerman does not argue, nor could he reasonably argue, that Gallo did not have a serious medical condition.  Instead, Feinerman contends that his decision to prescribe Prilosec rather than Prevacid does not establish deliberate indifference to a serious medical need but rather comports with the standard of medical care in the community (Doc. 77, p. 6).  Feinerman asserts that, under that standard, he had to see Gallo's allergic reaction to Prilosec before prescribing Prevacid because Gallo's reaction could have been caused by something other than that drug.  Also, according to Feinerman, Prilosec and Prevacid are "basically identical," and it would be "extremely unusual" for a patient to be allergic to one and not the other.

However, by mid-2005, the medical records show that Gallo was allergic to Prilosec but could tolerate Prevacid to treat his condition.  Feinerman claimed that he reviewed Gallo's record, according to which, Gallo exhibited a rash and a swollen tongue when taking Prilosec.  Also, the record

showed that Gallo had less gas, mucus and stool frequency when taking Prevacid instead of Prilosec.  Feinerman himself stated that the symptoms of which Gallo complained were consistent with a severe allergic reaction. Lastly, Feinerman conceded that it was possible to obtain non-formulary drugs and that it would be unusual for a request for a non-listed drug to be denied.

Adopting reasonable inferences and resolving doubts in favor of Gallo, a genuine issue of material fact exists as to whether Gallo was effectively left without treatment for serious medical condition when an effective drug was available, a drug, moreover, that Feinerman admitted in his deposition could be obtained even though it was non-formulary.  Stated more succinctly, as the Seventh Circuit Court of Appeals summed up Gallo's allegations, Feinerman's choice was "give Gallo a drug that helps him, or give Gallo a drug that harms him."  ***Gallo*, 399 Fed.Appx. at 119-20**.

Because genuine issues of material fact exist as to whether Feinerman was deliberately indifferent to Gallo's serious medical needs, summary judgment is not warranted.

## IV. <u>Conclusion</u>

For these reasons, the Court **DENIES** Feinerman's motion for summary judgment (Doc. 77).  This action remains set for jury trial on July 30, 2012, with a final pretrial conference set for July 12, 2012.

IT IS SO ORDERED.

DATED this 12th day of July, 2012

s/Michael J. Reagan
MICHAEL J. REAGAN
United States District Judge